UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                    :

FEDERAL TRADE COMMISSION,                 :

                                 Plaintiff,           :           12 Civ. 7189 (PAE)
            -v-                                         :
                                                 :           <u>OPINION & ORDER</u>

PCCARE247 INC., et al.,                        :

                               Defendants.        :
                                                 :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       Plaintiff the Federal Trade Commission moves for leave to effect service of documents other than the Summons and Complaint by alternative means on the following defendants, all located in India: Vikas Agrawal ("Vikas"), Anuj Agrawal ("Anuj"), Parmeshwar Agrawal ("Parmeshwar"), PCCare247 Solutions Pvt. Ltd., and Connexxions IT Services Private Limited (collectively, "defendants"). The FTC proposes to do so by means of both email and Facebook. For the reasons that follow, the motion is granted.

## I.     Background[1]

       On September 24, 2012, the FTC brought this action *ex parte* seeking a temporary restraining order and an order to show cause why a preliminary injunction should not be granted against nine defendants. These include the five India-based defendants to whom this motion

---

[1] The facts which form the basis of this Opinion are drawn from the parties' submissions over the course of this matter, including the Complaint (Dkt. 8); the FTC's submissions in support of its motion for a temporary restraining order and preliminary injunction (Dkt. 10–12); the defendants' submissions in support of their motion to dismiss (Dkt. 38–42); the FTC's submissions in opposition to the motion to dismiss (Dkt. 56), including the Declaration of Sheryl Novick ("Novick Decl."); and the FTC's submissions in support of the instant motion (Dkt. 82–83, 86). Unless otherwise noted, the facts are not disputed.

relates. The FTC alleges that the defendants operated a scheme that tricked American consumers into spending money to fix non-existent problems with their computers.

As alleged, this scheme was operated in large part out of call centers located in India. Vikas is alleged to have been the scheme's mastermind, running day-to-day operations and handling wire transfers and bank accounts. Anuj is also alleged to have played a major role in day-to-day operations, including managing advertising accounts and corresponding with web hosting services. Parmeshwar is alleged to have played a more limited role, including serving as a director of a defendant corporate entity and establishing a PayPal account for it. Vikas, Anuj, and Parmeshwar are each alleged to have been directors of PCCare247 Solutions Pvt. Ltd., and Vikas and Anuj are alleged to have been directors of Connexxions IT Services Private Limited.

On September 25, 2012, this Court entered a temporary restraining order, which, *inter alia*, enjoined defendants' business practices and froze various assets of the defendants.

On September 27, 2012, the FTC submitted the Summons, Complaint, and related documents to the Indian Central Authority for service on defendants, in accordance with Federal Rule of Civil Procedure 4(f)(1) and The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Service Convention" or "Convention"). The FTC also sent these documents to defendants by three alternative means: (1) by email to defendants' known email addresses; (2) by Federal Express ("FedEx"); and (3) by personal service via a process server.

By October 4, 2012, FedEx had confirmed delivery for most defendants, and the process server had personally delivered the Summons and Complaint to all five defendants. To date, however, the Indian Central Authority has not formally served defendants pursuant to the Convention, and it has not responded to the FTC's inquiries regarding service of defendants. On

October 9, 2012, Vikas was personally served with the Summons and Complaint in the United States.[2]  *See* Dkt. 69.

Defendants, having received actual notice of this action, retained counsel—Jack Wenik, Esq. and Marc Ullman, Esq.  On November 13, 2012, these attorneys represented defendants in a preliminary injunction hearing before this Court.  On November 16, 2012, the Court issued a preliminary injunction against defendants.  That injunction continued most of the terms of the temporary restraining order, but, significantly, it exempted certain assets from the asset freeze to enable defendants to pay attorneys' fees.  *See* Dkt. 65.

Despite the Court's unfreezing of assets for that purpose, defendants did not pay their attorneys.  Accordingly, on January 14, 2013, the Court granted Mr. Wenik and Mr. Ullman's motions to withdraw as counsel.  Dkt. 81.

To date, defendants have failed to comply with the terms of the preliminary injunction.  However, at least one defendant, Vikas, has remained in some contact with the FTC and the Court:  On January 3 and January 6, 2013, Vikas sent four emails to the FTC, blind carbon copying the Court's chambers email address.  *See* Dkt. 84.

On February 11, 2013, the FTC filed this motion.  Dkt. 82.  On the same date, the FTC served defendants with this motion via email and overnight mail.  Dkt. 82, at 3.

On March 1, 2013, this Court issued an Order directing the FTC to file a supplementary letter, providing more specifics regarding the proposed means of service: namely, which email addresses, social media accounts, and publications the FTC proposed to utilize.  Dkt. 85.  On

---

[2] This service was made the same day that Vikas appeared in this Court to attend a preliminary injunction hearing pertaining to Navin Pasari, another defendant in this case.  Pasari is not relevant to this motion.

March 5, 2013, the FTC submitted a responsive letter. Dkt. 86. Defendants have not responded to the FTC's motion.

## II.     Applicable Legal Standard

Under Federal Rule of Civil Procedure 4(f)(3), "a Court may fashion means of service on an individual in a foreign country, so long as the ordered means of service (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *SEC v. Anticevic*, No. 05 Civ. 6991 (KMW), 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) (citations omitted).[3] Under Rule 4(f), service of process on foreign corporations may be made in the same manner as on individual defendants. *See* Fed. R. Civ. P. 4(h)(2).

"Service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010) (citation omitted). "The decision of whether to order service of process under Rule 4(f)(3) is 'committed to the sound discretion of the district court.'" *United States v. Lebanese Canadian Bank*, 285 F.R.D. 262, 266 (S.D.N.Y. 2012) (quoting *Madu*, 265 F.R.D. at 115); *see also In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 433 (S.D.N.Y. 2009) ("A court is afforded wide discretion in ordering service of process under Rule 4(f)(3)." (citation

---

[3] Significantly, the FTC is proposing to use alternative means of service as to documents *other than* the Summons and Complaint. The FTC apparently also intends to serve defendants with such documents through the means provided in Rule 5, relating to service of non-case-initiating documents. *See* Fed. R. Civ. P. 5(b)(2)(C) (service by mail). As the FTC explains, it is covering its bases in pursuing service by the means for which it seeks approval here: A court in this district has held that the Hague Service Convention only applies to the initial service of process, not subsequent documents. *See SEC v. Credit Bankcorp., Ltd.*, No. 99 Civ. 11395 (RWS), 2011 WL 666158, at *4 (S.D.N.Y. Feb. 14, 2011) (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988)). In the interest of caution, the FTC proposes to serve defendants under both Rules 5 and 4(f)(3). For purposes of the ensuing discussion, the Court assumes, purely *arguendo*, that Rule 5 service would not be available.

4

omitted)); *Antisevic*, 2009 WL 361739, at *3 ("[Rule 4(f)(3)] provides the Court with flexibility and discretion empowering courts to fit the manner of service utilized to the facts and circumstances of the particular case." (citation omitted)).

"A plaintiff is *not* required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3), [but] [a] district court may nonetheless require parties to show that they have reasonably attempted to effectuate service on the defendant(s) and that the circumstances are such that the district court's intervention is necessary." *Antisevic*, 2009 WL 361739, at *3 (citation omitted) (emphasis in original); *see also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) ("[T]he advisory notes [to Rule 4] suggest that in cases of 'urgency,' Rule 4(f)(3) may allow the district court to order a 'special method of service,' even if other methods remain incomplete or unattempted."); *Madu*, 265 F.R.D. at 115 ("[D]istrict courts may impose a threshold requirement for parties to meet before seeking the court's assistance." (citation omitted)).

### III.     Discussion

Although the FTC's motion initially proposed to effect service by each of email, social networking sites, and publication, the FTC's supplemental letter has narrowed its request. Citing the costs of service by publication, the FTC requests, in the first instance, leave to serve the defendants through email and Facebook. *See* Dkt. 86, at 2. In the event such means are unsuccessful, the FTC represents, it will renew its motion to serve by publication. *Id.* Accordingly, the Court here considers only the request to serve by means of email and Facebook.

####       A. The Proposed Means of Service Are Not Prohibited By International Agreement

The United States and India are signatories to the Hague Service Convention. *See* Status Table, Members of the Organisation, Hague Conference on Private International Law, http://

www.hcch.net/index_en.php?act=conventions.status&cid=17 (last visited Feb. 27, 2013). Article 2 of the Convention provides that "[e]ach contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other contracting States." Hague Convention on Service Abroad of Judicial and Extrajudicial Documents art. 2, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

Article 10, in turn, allows for service of process through alternative means such as "postal channels" and "judicial officers," provided that the destination state does not object to those means. *Id.* art. 10. India has objected to the means listed in Article 10,[4] although that objection is specifically limited to the means of service enumerated in Article 10. *See Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011). And "[w]here a signatory nation has objected to only those means of service listed in Article [10], a court acting under Rule 4(f)(3) remains free to order alternative means of service that are not specifically referenced in Article [10]." *Id.*; *see also Anticevic*, 2009 WL 361739, at *4 (permitting service by alternative means where signatory nation did not "explicitly object[]" to such means in its declaration pursuant to the Convention); *In re S. African Apartheid Litig.*, 643 F. Supp. 2d at 434, 437 (requiring express objection to alternative means of service in reservation as to Article 10).

Service by email and Facebook are not among the means listed in Article 10, and India has not specifically objected to them. Numerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10. *See, e.g.*, *Gurung*, 279 F.R.D. at 220; *Philip Morris USA Inc. v. Veles Ltd.*, No. Civ. 2988 (GBD), 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007)

---

[4] *See* Declarations, Reservations, Hague Conference on Private International Law, http://www.hcch.net/index_en.php?act=status.comment&csid=984&disp=resdn (last visited Feb. 27, 2013).

6

(collecting cases authorizing email service). *But see Agha v. Jacobs*, No. C 07-1800 RS, 2008 WL 2051061, at *2 (N.D. Cal. May 13, 2008) (reference to "postal channels" in Article 10 may include emails). Service by Facebook is clearly outside the scope of Article 10. India has not objected to service by Facebook, and the Court knows of no international treaty prohibiting such means. Therefore, service by means of email and Facebook is not prohibited by international agreement. The Court, in its discretion, is therefore at liberty to authorize service by such means, provided that due process is also satisfied.

### B. The Proposed Means of Service Comport With Due Process

"Constitutional notions of due process require that any means of service be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Antisevic*, 2009 WL 361739, at *4 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Here, service by email and Facebook are reasonably calculated to provide defendants with notice of future filings in this case.

Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant. *Gurung*, 279 F.R.D. at 220; *see also Philip Morris*, 2007 WL 725412, at *3 (authorizing service by email where "defendants conduct business extensively . . . through their Internet websites and correspond regularly with customers via email" and rejecting "[d]efendants' objections about theoretical reliability of email service" where plaintiff "amply demonstrated the high likelihood that defendants would receive and respond to email communications"); *Williams-Sonoma Inc. v. Friendfinder Inc.*, No. C 06-06572 JSW, 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007) (authorizing service by email where plaintiff "has established that the email accounts [it has] for defendants have been effective means of

communicating with defendants"). Here, defendants ran an internet-based business and used email frequently for communication. *See, e.g.*, Novick Decl. Ex. 31, Att. A at 10–25. The FTC has identified email addresses for each individual defendant, and these defendants serve as directors of the defendant corporations.[5] The email addresses specified for Vikas and Anuj were demonstrably used for various tasks involved in the alleged scheme, such as setting up merchant-banking accounts and advertising accounts.[6] *See, e.g.*, Novick Decl. ¶¶ 40, 56, 59, 61, 66; *see also id.* Ex. 27 Atts. V, Y. And the Court has independent confirmation that at least one of these email accounts was recently in use by the specified defendant: Vikas Agrawal used the address vikas.agrawal@pccare247.com to email the Court on four occasions on January 3 and 6, 2013. *See* Dkt. 84. The FTC has, therefore, demonstrated a high likelihood that defendants will receive and respond to emails sent to these addresses. Service by email alone, therefore, would comport with due process. *See Gurung*, 279 F.R.D. at 220; *Phillip Morris*, 2007 WL 725412, at *3.

For the sake of thoroughness, however, the FTC also proposes to serve the defendants by means of Facebook. For the uninitiated, such service would work as follows: The FTC would send a Facebook message, which is not unlike an email, to the Facebook account of each individual defendant, attaching the relevant documents. Defendants would be able to view these

---

[5] Those emails addresses are as follows. Vikas Agrawal: vikas.agrawal@pccare247.com and kusalbag@hotmail.com. Anuj Agrawal: anuj.agrawal@iconnexxions.com and anuj.agrawal@pccare247.com. Parmeshwar Agrawal: parmeshwar@marbleindian.com.

[6] As noted in the Court's bench opinion regarding the FTC's motion for a preliminary injunction, the evidence of Parmeshwar's involvement in the scheme is more limited than that of Vikas and Anuj. However, the relevant inquiry for purposes of this motion is whether Parmeshwar is likely to receive emails at the specified address. The FTC has made such a showing. *See, e.g.*, Novick Decl. Ex. 31, Att. A at 19 (emails copying parmeshwar@marbleindian.com regarding PCCare247 customer service issues); *id.* Ex. 27, Att. Y (same email address used to register Parmeshwar's Facebook account).

messages when they next log on to their Facebook accounts (and, depending on their settings, might even receive email alerts upon receipt of such messages).

To be sure, if the FTC were proposing to serve defendants *only* by means of Facebook, as opposed to using Facebook as a supplemental means of service, a substantial question would arise whether that service comports with due process. As one court in this district has observed, "anyone can make a Facebook profile using real, fake, or incomplete information, and thus, there is no way for the Court to confirm" whether the Facebook page belongs to the defendant to be served. *See Fortunato v. Chase Bank USA*, No. 11 Civ. 6608 (JFK), 2012 WL 2086950, at *2 (S.D.N.Y. June 7, 2012). In *Fortunato*, the court denied authorization for service by Facebook because it found that plaintiff "has not set forth any facts that would give the Court a degree of certainty that the Facebook profile [plaintiff's] investigator located is in fact maintained by [defendant] or that the email address listed on the Facebook profile is operational and accessed by [defendant]." *Id.*

The proposed Facebook service in this case does not suffer from that defect. The FTC has set forth facts that supply ample reason for confidence that the Facebook accounts identified are actually operated by defendants. Anuj and Parmeshwar each registered their Facebook accounts with the email addresses cited above, and Vikas registered his account using the same email address used to register iConnexxions.com, one of the websites that was germane to defendants' scheme. *See* Novick Decl. Ex. 27, Atts. V, Y. Further, on Facebook, Vikas and Anuj both list their job titles at the defendant companies as their professional activities, and both are "friends" with Parmeshwar. *Id.* Thus, the FTC has demonstrated a likelihood that service by Facebook message would reach defendants.

The Court acknowledges that service by Facebook is a relatively novel concept, and that it is conceivable that defendants will not in fact receive notice by this means. But, as noted, the proposed service by Facebook is intended not as the sole method of service, but instead to backstop the service upon each defendant at his, or its, known email address. And history teaches that, as technology advances and modes of communication progress, courts must be open to considering requests to authorize service via technological means of then-recent vintage, rather than dismissing them out of hand as novel. *See, e.g.*, *New England Merch. Nat'l Bank v. Iran Power Generation and Transmission Co.*, 495 F. Supp. 2d 73, 81 (S.D.N.Y. 1980) (authorizing service by Telex, and noting that courts "cannot be blind to changes and advances in technology. No longer do we live in a world where communications are conducted solely by mail carried by fast sailing clipper or steam ships."); *Rio Props.*, 284 F.3d at 1017 (authorizing service by email, while "acknowledg[ing] that we tread upon untrodden ground"). As the Ninth Ciruit has stated, the due process reasonableness inquiry "unshackles the federal courts from anachronistic methods of service and permits them entry into the technological renaissance." *Rio Props.*, 284 F.3d at 1017. Particularly where defendants have "zealously embraced" a comparatively new means of communication, it comports with due process to serve them by those means. *Id.* at 1018 (recognizing the limitations of service of process by new means, such as email, but leaving it to the discretion of the district court "to balance the limitations of email service against its benefits in any particular case"). Service by alternative means is all the more reasonable where, as here, the defendants demonstrably already have knowledge of the lawsuit. *See SEC v. Tome*, 833 F.2d 1086, 1093 (2d Cir. 1987). *Cf. Smith v. Islamic Emirate of Afg.*, No. 01 Civ. 10132 (HB), 2001 WL 1658211, at *3 (S.D.N.Y. Dec. 26, 2001).

For these reasons, the FTC's proposal to serve defendants by *both* email and Facebook satisfies the due process inquiry. Where defendants run an online business, communicate with customers via email, and advertise their business on their Facebook pages, service by email and Facebook together presents a means highly likely to reach defendants.

### C.  Service By the Proposed Means Is Warranted Here

The Court, finally, also considers the FTC's good faith efforts to serve defendants by other means. *See Anticevic*, 2009 WL 361739, at *4. Pursuant to the Convention, the FTC has attempted to serve the Summons and Complaint on the India-based defendants via the Indian Central Authority. Despite having submitted these documents to the Indian Central Authority on September 27, 2012—more than five months ago—the FTC has received no indication that defendants have been served. Nor has the Indian Central Authority responded to the FTC's inquiries. Nevertheless, as a result of the FTC's efforts to serve defendants through various informal means, defendants have notice of these proceedings, as evidenced by their appearance through counsel.

Before counsel withdrew from the case, the FTC might have been able to serve defendants with motions and other documents via counsel. However, counsel's withdrawal—due to defendants' failure to pay their attorney's fees, despite this Court's decision to grant an exemption from the asset freeze for that singular purpose—has eliminated that option. The FTC has made ample attempts to serve defendants by other means, but it is now left with no way to do so except by the Indian Central Authority, which to date has not shown a disposition to act—or even to respond to the FTC's queries. This litigation must move forward, and it is not tolerable to wait five months (or more) for every motion in this case to be served by the Central Authority. *See Richmond Techs., Inc. v. Aumtech Business Solutions*, No. 11-CV-02460-LHK, 2011 WL

11

2607158, at *13 (N.D. Cal. July 1, 2011) (authorizing alternative service where service via Indian Central Authority would take 6–8 months). The Court's intervention is warranted here.

## CONCLUSION

The FTC's motion to serve defendants through alternative means, to wit, email and Facebook, is granted. The FTC is granted leave to serve motions and other post-complaint documents in this case on defendants in the manner specified herein:

1. Defendant Vikas Agrawal at vikas.agrawal@pccare247.com, kusalbag@hotmail.com, and by message to his Facebook account.

2. Defendant Anuj Agrawal at anuj.agrawal@iconnexxions.com, anuj.agrawal@pccare247.com, and by message to his Facebook account.

3. Defendant Parmeshwar Agrawal at parmeshwar@marbleindian.com, and by message to his Facebook account.

4. Defendant PCCare247 Solutions Pvt. Ltd. through its directors, Vikas, Anuj, and Parmeshwar Agrawal, at the email addresses and Facebook accounts listed above.

5. Defendant Connexxions IT Services Private Limited through its directors, Vikas and Anuj Agrawal, at the email addresses and Facebook accounts listed above.

The Clerk of Court is directed to terminate the motion pending at docket number 82.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: March 7, 2013
       New York, New York